IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**　　　　　　　　　　　　　　　　　　　　　　　　**Case No. CR 25-1801 SMD**

**KOMILJON TOIROV,**

      **Defendant.**

**ORDER DENYING UNOPPOSED MOTION TO VACATE AND RESET JURY TRIAL**

THIS MATTER is before the Court on the United States' Unopposed Motion to Vacate and Reset Jury Trial (Doc. 45). On September 5, 2025, the United States filed a Notice of Appeal (Doc. 44) of the Court's Amended Order of Release (Doc. 37).

The Speedy Trial Act governs the time in which a case must be brought to trial and excludable delays from the 70-day Speedy Trial clock. 18 U.S.C. § 3161. Particularly relevant in this case are delays excludable under §§ 3161(h)(1)(C) and (D), relating to the pendency of interlocutory appeals and pretrial motions respectively. This case has presented novel issues at each stage of its lengthy pendency—152 days and counting since the defendant's arrest on May 4, 2025, at the time of this Order. For the purposes of counting Speedy Trial time in this case, the time runs from the filing of the three-count Information (Doc. 6) on May 29, 2025, as all charges are and remain misdemeanors and have not been presented to a grand jury. *See* 18 U.S.C. § 3161(c)(1).

On the same day that the Information was filed before United States Magistrate Judge Jerry H. Ritter, the defendant was arraigned on all counts, and he pled guilty to Count One, charging the class B misdemeanor offense of illegal entry without inspection, pursuant to 8 U.S.C. § 1325(a)(1).

Doc. 8.  The defendant was sentenced to time served, or 26 days, on Count One, which was severed from the pending counts and judgment entered.  Docs. 18, 19.  The defendant pled not guilty to Counts Two and Three and, following his plea and sentencing on Count One, Judge Ritter re-opened detention.  Doc. 8.  Judge Ritter then released the defendant on his own recognizance, finding that the remaining counts are fatally flawed based on the government's lack of evidence that the defendant had knowledge of the newly created National Defense Area at the United States/Mexico border in southern New Mexico where he illegally entered the country.  Docs. 8, 9.

Judge Ritter stayed the release for 24 hours to allow the government the opportunity to decide whether to file a motion to revoke/appeal the release order to the district court, which they did later the same day.  Docs. 6–9.  After receiving the parties' briefing, this Court held a hearing on the government's motion on June 18, 2025, subsequently denied the motion, and released the defendant on his own recognizance that same day.  Doc. 16.  The Speedy Trial Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]"  18 U.S.C. § 3161(h)(1)(D).  The Information in this case was filed on May 29, 2025, and the government also filed its notice of appeal, often also styled as a motion to revoke release, on the same day.  Doc. 7.  Therefore, pursuant to § 3161(h)(1)(D), the Speedy Trial clock did not begin running until the government's motion was resolved on June 18, 2025.  Docs. 7, 16.

On June 26, 2025, the Court set  trial for August 4, 2025.  Doc. 21.  That same day, the Court also issued an order for the government to provide information as to the custody and removal statuses of the defendant and to show cause why the charges should not be dismissed as the defendant's potential removal from the United States could implicate important Constitutional and

statutory trial rights. Doc. 22. On July 3, 2025,[1] the United States filed a notice of appeal of the Court's June 18 release order to the Tenth Circuit Court of Appeals, subsequently docketed as Case No. 25-2074. Docs. 24, 27. On July 8, 2025, the government responded to the Court's order to show cause, indicating that the defendant was released to Immigration and Customs Enforcement custody following the Court's June 18 release order, where he remained at that time. Doc. 26. As it remained possible to bring the defendant back for trial at that time, the government requested that the Court not dismiss the case at that time. *Id.* On July 15, 2025, the Court vacated the August 4, 2025 trial setting, due to the pending appeal, but did not dismiss the case. Doc. 28. The next day, July 16, 2025, the defendant replied to the government's response to the Court's order to show cause, demanded a speedy trial, and requested that the trial be reset "as soon as practicable." Doc. 29.

On July 29, 2025, the Court ordered the parties to submit a joint status report indicating their calculation of the Speedy Trial deadline. Doc. 30. The parties complied, as directed, on July 31, 2025. Doc. 33. In the status report, the government asserted the position, which the Court now adopts, that "day zero" for the purposes of the Speedy Trial clock was May 29, 2025, but that the notice of appeal filed that same day tolled the clock until the Court affirmed Judge Ritter's release order on June 18, 2025. *Id*. The defendant did not contest the government's assertion that the clock was tolled until June 18, 2025, and tolled again starting on July 3, 2025.[2] However, the defendant asserted his Sixth Amendment right to a speedy trial and asserted that for calculating

---

[1] The government was directed by the district court clerk's office to refile the notice of appeal to correct the document classification, but the second notice is otherwise identical to the notice filed on July 3, 2025, and appears only to have been filed for internal court purposes. Docs. 23, 24.

[2] The government calculated that 13 days had elapsed as of July 31, 2025, and the defendant did not dispute the government's calculation. Doc. 30. However, as discussed below, the Court finds that 14 days elapsed from June 19, 2025, the day after the Court affirmed Judge Ritter's release order, to July 2, 2025, the day before the government's notice of appeal again tolled the Speedy Trial clock.

any future Constitutional challenge, his position is that May 4, 2025, will be the operative date. *Id*.

The issue of release or detention is one of a limited number of issues for which interlocutory appeal of an issue prior to a final order in a case is permissible pursuant to the collateral order doctrine. "Indeed, the Supreme Court has applied the collateral order exception in only three categories of criminal cases: appeals from (1) motions to reduce bail; (2) motions to dismiss based on double jeopardy grounds; and (3) motions to assert immunity under the Speech or Debate Clause of the Constitution." *United States v. Tucker*, 745 F.3d 1054, 1063 (10th Cir. 2014) (internal citations omitted). An interlocutory appeal divests the trial court of its jurisdiction "over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

Ordinarily, the issue of release or detention pending trial would appear wholly collateral and separate from the remainder of a pending criminal prosecution. However, in this case, the crux of the government's argument in favor of detaining the defendant pending the resolution of the remaining charges focuses on their position that the weight of the evidence against the defendant is strong. This is based on the government's argument that proof that the defendant was committing some crime at the time he entered the New Mexico National Defense Area (NM NDA) is sufficient to prove beyond a reasonable doubt that he also willfully violated 50 U.S.C. § 797 and 18 U.S.C § 1382, collectively referred to as "the military trespass statutes." *See* Doc. 13 at 6. The defense bar and every judge in the Las Cruces district courthouse disagrees with the government on the mens rea requirements of these two statutes. And the government's position that the district court is wrong about the mens rea requirements is the issue upon which their first, and presumably second, appeal of the Court's release order rests. At the June 18, 2025 hearing before this Court

4

on their motion to revoke Judge Ritter's release order, the government conceded that they "do not have that information that [the defendant] knew that this was an NDA." Transcript of Proceedings, Doc. 17 at 14. For this reason, the mens rea requirements and proper elements of proof for the remaining charges in this case are the heart of the entire controversy in this case. Had the Tenth Circuit accepted the United States' invitation to wade out of the shallow water of whether the Court properly considered the statutory factors in making its release determination, and into the much deeper substantive water of these elements, the result of the first appeal would undoubtedly have had a dispositive effect, one way or the other, in this case. Thus, that potential for a dispositive ruling arguably involved the entire case, and for those reasons the Court finds that the first interlocutory appeal of release in this case should toll the Speedy Trial clock. 18 U.S.C. § 3161(h)(1)(C); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023). Therefore, the Court finds that the first appeal tolled the Speedy Trial clock from July 3, 2025, to the issuance of the Tenth Circuit's Mandate on August 20, 2025. Doc. 36-1; *see United States v. Scalf*, 760 F.2d 1057, 1059 (10th Cir. 1985).

The Tenth Circuit did not accept the government's invitation, however. Although the appellate court found that this Court erred "when it treated the answer to the statutory-interpretation question . . . as essentially dispositive of whether there are conditions of release that will reasonably assure the defendant's appearance as required[,]" Doc. 36-1 at 2, the appellate court itself declined to discuss the statutory-interpretation question at all, even in dicta. *See* Doc. 36.

At this time, the Court finds that the following days count toward the Speedy Trial clock in this case: June 19, 2025 to July 2, 2025 (14 days following the Court's release order until the government's first notice of appeal); August 21, 2025 to September 23, 2025 (34 additional days

5

following the Tenth Circuit's Mandate until the government's unopposed motion to vacate and reset the jury trial, for a total of 48 days). The Court finds that pursuant to 18 U.S.C. § 3161(h)(1)(D), the pending motion to vacate tolled the clock, and with the resolution of this motion, the clock will restart with 22 days remaining.

The government has not yet filed its opening brief in the appeal of this Court's Amended Release Order. However, that order is the only new substantive filing in this case following the Mandate. As such, it seems much less likely that there will be a new issue or way to phrase the question at issue, essentially whether this Court's release determination was properly decided, that would require or even compel the Tenth Circuit to rule on the lingering statutory-interpretation question. And for this reason, the Court declines to find on its own that this second release appeal will automatically toll the Speedy Trial clock. If one or both of the parties disagree with this Court's analysis, they are free to seek a stay of this case from the Tenth Circuit pending the current appeal. Unless and until such a stay is granted by the Tenth Circuit, however, the current trial setting will not be vacated.

**IT IS THEREFORE ORDERED** that the United States' Unopposed Motion to Vacate and Reset Jury Trial (Doc. 45) is **DENIED**.

**IT IS FURTHER ORDERED** that the October 20, 2025 jury trial (Doc. 42); the October 14, 2025 pretrial conference (Doc. 41); and the scheduling order deadlines (Doc. 40) will remain unchanged unless and until this case is stayed by the Tenth Circuit Court of Appeals during the pending interlocutory appeal.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**